United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,                Case No. 16-20820

        v.                     Honorable Avern Cohn

Martez Bailey,

        Defendant.

_____/

## United States's Sentencing Memorandum

The defendant, Martez Bailey, illegally possessed a firearm on two separate occasions in November and December 2016 despite being on probation at the time. This is not unusual; Bailey has been convicted of multiple offenses in the past, and he continues to flout the law. Indeed, when the FBI came to arrest Bailey on December 13, 2016, he jumped out a back window of his apartment, taking only two guns with him into the cold, and tried to flee despite the presence of over a dozen agents. Bailey refused to surrender, and it was only the extreme temperature that morning that resulted in his arrest. Because of Bailey's persistent refusal to respect the law or comply with orders from courts or law

enforcement, the government asks for a 30-month sentence of imprisonment, followed by three years of supervised release.

## I.      Factual and Procedural History

### A.     Offense Conduct

Detroit Police stopped a vehicle after a traffic violation on November 22, 2016. The driver did not have a valid license, and police asked him to exit the car. While officers talked to the driver, they instructed the other occupants, including Martez Bailey (sitting in the back seat), to keep their hands on the headrests in front of them. Another person in the car (not Bailey) refused to comply, so police detained him. Bailey sensed an opportunity amidst the commotion and tried to hide a gun in his waistband under the front passenger seat. But an officer saw him and arrested him. Bailey could not possess the gun legally because he is a felon.

The FBI adopted this case because Bailey is a gang member. Bailey, also known as "Stone," is a member of a gang called Bandgang; Bandgang was formed after several smaller gangs on the west side of Detroit joined forces. Prior to that merger, Bailey was a member of MPR—short for Money, Power, Respect.

2

In early December, members of the FBI Violent Gang Task Force searched for Bailey's residence and obtained a federal search warrant for an apartment building in Detroit. *See In the Matter of the Search of XXX Seward St.*, No. 16-mc-50275-17. On December 13, 2016, at 6:45 a.m., a team of agents executed the warrant, looking for Bailey. It was extremely cold that day, approximately 10 degrees. Nevertheless, when agents raided the apartment, Bailey fled through a back window wearing only a shirt and a pair of shorts. While Bailey was not dressed for the cold, he did try to bring something he deemed important—he threw two firearms out the window before jumping into the snow. One of the guns was stolen. Agents ordered Bailey to stop and surrender; he refused. Instead, he tried to run, and a task force officer tried to tase him to submit. It missed, and Bailey persisted in trying to get away. Finally, he relented, but not because of the agents. He was cold and barefoot. Inside, Bailey told the agents that had he been wearing shoes, they never would have caught him.

B.   Procedural History

A grand jury charged Bailey the same day in a two-count indictment. (R. 8: Indictment, 17). Bailey pleaded guilty to the charges.

3

(R. 18: Plea Agreement, 35). In the plea agreement, the parties calculated the guidelines range as 21–27 months' imprisonment, but noted that the range could change if probation determined his criminal history category was higher than their estimates. (*Id.* at 37–38). But the parties also agreed not to count Bailey's conviction in August 2013 for receiving and concealing stolen property in its calculation of his criminal history. (*Id.* at 50).

Bailey faces a maximum term of imprisonment of 10 years (per count), a fine of $250,000, a special assessment of $200, and a 3-year term of supervised release.

## II.   Sentencing Guideline Calculations and Relevant 3553(a) Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered to impose a sentence "sufficient, but not greater than necessary." Those objectives include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the

4

Sentencing Guidelines; (5) Sentencing Commission policy statements; and (6) the need to avoid unwarranted sentencing disparities (nationwide) among defendants with similar records found guilty of similar conduct. But sentencing starts with the calculation of the Guidelines range to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities[.]" *United States v. Booker*, 543 U.S. 220, 264 (2005).

    A.    <u>Advisory Guidelines Range</u>

Section 2K2.1 governs firearms offenses. Bailey could not lawfully possess a firearm, as he had been convicted of two felonies before November 2016. As a result, the base offense level is 14 under USSG § 2K2.1(a)(6)(A). (PSR ¶ 22). Bailey possessed three or more guns between the two incidents; this adds two levels under USSG § 2K2.1(b)(1)(A). (PSR ¶ 23). One of the guns—a Glock .45 caliber handgun—was stolen, which adds two levels under USSG § 2K2.1(b)(4). (*Id.* at ¶ 24). The adjusted offense level is 18, and the reduction for acceptance of responsibility results in a total offense level of 15. (*Id.* at ¶ 32).

Probation calculated seven criminal history points, which placed Bailey in criminal history category IV. (PSR ¶¶ 35–40). Technically, this is correct, but it also overstates Bailey's criminal history because Bailey is actually innocent of his conviction for receiving and concealing property in June 2013. Members of the FBI Violent Gang Task Force, in its investigation of the gang Related Through Money (RTM), learned that RTM gang members, not Bailey, committed the carjacking described in Paragraph 36 of the presentence report. Bailey has not yet had this conviction expunged, but the Court should ignore the conviction, and the resulting one criminal history point, as if it has. *See* USSG § 4A1.2(j).

But disregarding the one point for the conviction does not mean the Court should ignore that Bailey repeatedly failed to comply with his terms of probation for this conviction, including when he possessed the firearm on November 22, 2016 (the basis for Count 1). (PSR ¶ 39). Accordingly, the government believes the correct number of criminal history points is 6 (the 7 points that probation correctly counted minus the one point for the August 2013 conviction). Six points places Bailey in Criminal History Category III.

6

Accordingly, based on a total offense level of 15, and a Criminal History Category of III, the advisory Guidelines range is 24–30 months in prison.

    B.    <u>Section 3553(a) Factors</u>

        i.    <u>Nature of the Offense</u>

Possession of a firearm by a felon is a serious offense. Congress stressed the substantial threat that armed felons pose to society in enacting the very statute that Bailey is charged with violating. *See* U.S.C. App. § 1201 (1982) (congressional declaration that possession of firearms by felons poses a threat to commerce), repealed by Pub. L. 99-803, § 104(b), 100  Stat. 459 (1986); 114 Cong. Rec. 14,773 (1968) (Senator Russell Long, sponsor of original version of 18 U.S.C. § 922(g), observing that felons "may not be trusted to possess a firearm without becoming a threat to society").

Bailey embodies this concern. He had three firearms on two separate occasions—in less than three weeks—despite two prior convictions. And, more disturbing, when Bailey tried to flee from the team of FBI agents, the one thing he thought most important to take with him was not a coat or pair of shoes, but the two guns in his home.

7

ii.   History and Characteristics of the Defendant

Bailey is 23 years old. Despite his young age, he has a lengthy criminal history already. He was convicted of home invasion and discharging a firearm causing injury as a juvenile, and he was convicted of possessing marijuana and larceny as an adult. (PSR ¶¶ 33–35, 37).

Bailey is also a member of Bandgang, a violent street gang on the west side of Detroit under investigation by the FBI. At this time, multiple Bandgang members are charged in ten cases before judges of this Court, with more to come.

iii.   Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment

This is a serious crime. Armed felons present a substantial threat to society, and Bailey has already been convicted of one offense in which he shot someone causing injury.

Bailey has shown his lack of respect for the law by his choices. Over and over, he has flouted the law with little consequences. He received a two-year term of probation in 2013 after the carjacking arrest, but instead of taking advantage of this opportunity, he violated his probation over and over. Finally, his probation was terminated

8

because of his lack of improvement. Despite this, he still chose to possess guns in November and December 2016—a clear indication of his lack of respect for the law.

In terms of just punishment, the United States believes this case warrants a sentence at the top of the guidelines range—30 months. Nationally, district courts vary from the applicable Guidelines range using the § 3553(a) factors in only 22% of all firearms cases.[1] A sentence outside of this range not only fails to justly punish Bailey, it also results in an unwarranted disparity in sentencing.

iv. <u>Need for Deterrence</u>

All of the above factors also implicate the need for a sentence to provide sufficient deterrence. And Bailey clearly needs to be deterred. His conduct shows a person who does not care about the ramifications of his actions, as evidenced by his attempt to flee over a dozen FBI agents at his residence to arrest him. Hopefully, a guidelines sentence will

---

[1] United States Sentencing Commission, <u>Sentences Relative to the Guideline Range by Selected Primary Offense Category</u> (Fiscal Year 2016) 19, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2016/6c16.pdf.

deter him in the future.

   v. <u>Protecting the Public</u>

  In addition to the need to deter Bailey, a sentence of 30 months will protect the public from his repeated illegal conduct. Bailey has a history of drug, theft, and firearm offenses, including previously shooting someone, all of which negatively affect society. A 30-month term of custody will ensure the safety of the community while Bailey is in prison.

## III. Conclusion

  For these reasons, the United States recommends a 30-month sentence of imprisonment, followed by three years of supervised release.

      Respectfully submitted,

      Daniel L. Lemisch
      United States Attorney

      <u>/s/ Shane Cralle</u>
      Shane Cralle
      Assistant U.S. Attorney
      211 W. Fort Street, Suite 2001
      Detroit, MI 48226
      Phone: (313) 226-9551
      shane.cralle@usdoj.gov

Dated: June 20, 2017

**Certificate of Service**

I certify that on June 20, 2017, I electronically filed this

Sentencing Memorandum, with the Clerk of the Court using the ECF

system, which will send notification of such filing to the following

attorney of the defendant:

Linda D. Ashford
ldashford@comcast.net

/s/ Shane Cralle
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9551
Fax: (313) 226-5892
Email: Shane.Cralle@usdoj.gov